

Case No. 1:19-cv-00187-LAS
(Senior Judge Loren A. Smith)

BID PROTEST

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

TELOS IDENTITY MANAGEMENT SOLUTIONS, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

IDEMIA IDENTITY & SECURITY USA, LLC.

Defendant-Intervenor

---

## DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DOUGLAS K. MICKLE
Assistant Director

Virginia G. Farrier
Assistant Chief Counsel
(Acquisition, Policy & Transactions)
Chief Counsel's Office

ASHLEY AKERS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 353-0521
Ashley.Akers@usdoj.gov

May 21, 2019

Attorneys for Defendant

**TABLE OF CONTENTS**

                                                                                                    **PAGE**

QUESTIONS PRESENTED ........................................................................................... 2

SUMMARY OF ARGUMENTS .................................................................................... 2

STATEMENT OF FACTS ............................................................................................ 5

    I.      Nature Of The Case ..................................................................................... 5

    II.     Statement Of Facts ...................................................................................... 5

           A.      The Original Universal Enrollment Services Contract ............................. 5

           B.      Approval For A Single Contract Award ................................................... 7

           C.      The Solicitation ........................................................................................ 8

           D.      Proposal Evaluations And Award Decision .............................................. 10

           E.      Voluntary Remand At Court Of Federal Claims ..................................... 10

ARGUMENT ................................................................................................................. 12

    I.      Standard Of Review In A Bid Protest ....................................................... 12

    II.     TSA Reasonably Concluded That Idemia Did Not Make A Material
           Misrepresentation ....................................................................................... 13

           A.      Idemia Did Not Make A False Statement ................................................. 14

           B.      Telos Has Not Shown That Idemia's Certification Was Made
                 With An Intent To Deceive The Government ........................................... 17

           C.      TSA Did Not Rely On Idemia's Statement And Therefore It Could
                 Not Have Been "Material" To The Responsibility Determination ........... 20

    III.    TSA Reasonably Determined Idemia Is A Responsible Contractor .................... 21

    IV.   TSA Acted Lawfully And Within Its Discretion To Make Only One Award ...... 26

           A.      Telos Has Waived Its Claim ..................................................................... 26

           B.      TSA Complied With The FAR In Making A Single Award .................... 27

i

C.      TSA Complied With The TSA Act In Making A Single Award.............. 30

V.     **TSA Rationally Evaluated Telos's Management And Technical Proposals** ........ 30

A.      TSA Rationally Evaluated Telos's Management Proposal...................... 31

B.      TSA Rationally Evaluated Telos's Technical Proposal........................... 33

VI.    **TSA Adequately Stated Its Requirements** ............................................................ 34

VII.   **Best Value Determination** .................................................................................... 36

VIII.  **Telos Is Not Entitled To A Permanent Injunction** ................................................ 36

A.      Telos Has Failed To Establish Irreparable Harm...................................... 37

B.       The Balance Of Harms Weighs In TSA's Favor And The Public
        Interest Is Served By Denying An Injunction........................................... 38

**CONCLUSION**.................................................................................................................... 40

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

*Acrow Corp. of Am. v. United States,*
   97 Fed. Cl. 161 (2011) ........................................................................................ 20, 21

*Aero Corp., S.A. v. United States,*
   38 Fed. Cl. 237 (1997) ............................................................................................ 39

*Air Transport Ass'n of Am., Inc. v. Export-Import Bank of the United States,*
   840 F. Supp. 2d 327 (D.D.C. 2012) ....................................................................... 37

*Ala. Aircraft Indus., Inc. v. United States,*
   586 F.3d 1372 (Fed. Cir. 2009) .............................................................................. 12

*Algese 2 S.C.A.R.L. v. United States,*
   125 Fed. Cl. 431 (2016) .......................................................................................... 15

*Algese 2 S.C.A.R.L. v. United States,*
   127 Fed. Cl. 497 (2016) .................................................................................... 15, 20

*Baird Corp. v. United States,*
   1 Cl. Ct. 662 (1983) ................................................................................................ 37

*Banknote Corp. of Am., Inc. v. United States,*
   56 Fed. Cl. 377 (2003) ...................................................................................... 30, 35

*Bannun, Inc. v. United States,*
   119 Fed. Cl. 291 (2014), *aff'd*
   616 F. App'x 420 (Fed. Cir. 2015) ........................................................................ 14

*Bender Shipbuilding & Repair Co. v. United States,*
   297 F.3d 1358 (Fed. Cir. 2002) ................................................................... 22, 24, 25

*Blue & Gold Fleet, L.P. v. United States,*
   492 F.3d 1308 (Fed. Cir. 2007) ................................................................... 27, 35, 36

*Bowman Transp., Inc., v. Arkansas-Best Freight Sys., Inc.,*
   419 U.S. 281 (1974) ................................................................................................ 13

*CACI Field Servs., Inc. v. United States,*
   854 F.2d 464 (Fed. Cir. 1988) ................................................................................ 13

*Comint Sys. Corp. v. United States*,
   700 F.3d 1377 (Fed. Cir. 2012)..............................................................................27

*Femme Compe Inc. v. United States*,
   83 Fed. Cl. 704 (2008) ...............................................................................33, 35

*Grumman Data Sys. Corp. v. Dalton*,
   88 F.3d 990 (Fed. Cir. 1996)....................................................................................13

*HomeSource Real Estate Asset Servs., Inc. v. United States*,
   94 Fed. Cl. 466 (2010) ..............................................................................................31

*Honeywell, Inc. v. United States*,
   870 F.2d 644 (Fed. Cir. 1989)..................................................................................13

*House of Comm'ns & Graphics*,
   B-245920, 1992 WL 55054 (Comp. Gen. March 4, 1992)......................................22

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
   238 F.3d 1324 (Fed. Cir. 2001) ........................................................................12, 35

*JDL Constr., Inc. v. United States*,
   14 Cl. Ct. 825 ...........................................................................................................39

*LABAT-Anderson, Inc. v. United States*,
   65 Fed. Cl. 570 (2005) .............................................................................................39

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ................................................................................................30

*Minor Metals, Inc. v. United States*,
   38 Fed. Cl. 379 (1997) .............................................................................................38

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010).................................................................................................37

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...................................................................................................13

*NCL Logistics Co. v. United States*,
   109 Fed. Cl. 596 (2013) ...........................................................................................22

*News Printing Co. v. United States*,
   46 Fed. Cl. 740 (2000) .............................................................................................22

*Northrop Grumman Corp. v. United States,*
   50 Fed. Cl. 443 (2001) ............................................................................... 17

*OSG Prod. Tankers LLC v. United States,*
   82 Fed. Cl. 570 (2008) ............................................................................... 22

*Palantir USG, Inc. v. United States,*
   129 Fed. Cl. 218 (2016) ............................................................................. 38

*Peter Kiewit Sons' Co. v. United States Army Corps of Eng'r,*
   714 F.2d 163 (D.C. Cir. 1983) ................................................................... 22

*PGBA, LLC v. United States,*
   389 F.3d 1219 (Fed. Cir. 2004) .................................................................. 37

*Ravens Group, Inc. v. United States,*
   78 Fed. Cl. 390 (2007) ............................................................................... 13

*Remington Arms Co. v. United States,*
   126 Fed. Cl. 218 (2016) ............................................................................. 22

*Savantage Fin. Servs. v. United States,*
   595 F.3d 1282 (Fed. Cir. 2010) .................................................................. 12

*Sierra Military Health Serv. v. United States,*
   58 Fed. Cl. 573 (2003) ............................................................................... 38

*Spacecraft, Inc.,*
   B-248808 (Comp. Gen.), 1992 WL 278888 (1992) ............................ 18, 20

*Supreme Foodservice GmbH v. United States,*
   112 Fed. Cl. 402 (2013) ......................................................................... 17, 21

*Synetics, Inc. v. United States,*
   45 Fed. Cl. 1 (1999) .............................................................................. 14, 17

*Universal Tech. Inc.; Spacecraft, Inc.,*
   B-248808 (Comp. Gen.), 1992 WL 278888 (1992) ............................ 18, 20

*Watts-Healy Tibbitts v. United States,*
   84 Fed. Cl. 253 (2008) ............................................................................... 25

*Weeks Marine, Inc. v. United States,*
   575 F.3d 1352 (Fed. Cir. 2009) .................................................................. 13

*Wisconsin Gas Co. v. Fed. Energy Reg. Comm'n,*
   758 F.2d 669 (D.C. Cir. 1985) ................................................................. 37

*Zenith Radio Corp. v. United States,*
   710 F.2d 806 (Fed. Cir. 1983)................................................................. 38

## STATUTES

5 U.S.C. § 702 ........................................................................................... 12

5 U.S.C. § 706(2)(A) ................................................................................ 12

28 U.S.C.§ 1491(b)(1) ............................................................................. 12

28 U.S.C. § 1491(b)(3) ............................................................................. 39

49 U.S.C. § 44919(k) ................................................................................ 30

## REGULATIONS

48 C.F.R. § 9.103(b) ................................................................................. 21

48 C.F.R. § 9.104-1 .................................................................................. 21

FAR 16.504 ................................................................................... 27, 28, 29

FAR 16.504(c)(1)(ii)(D) .......................................................................... 28

FAR 52.209-5 ............................................................................................ 16

FAR 52.212-3 .............................................................................................. 9

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

**TELOS IDENTITY MANAGEMENT
SOLUTIONS, LLC,**

      Plaintiff,

          v.

**UNITED STATES,**

      Defendant,

      and

**IDEMIA IDENTITY & SECURITY USA,
LLC,**

      Defendant-Intervenor.

Case No. 1:19-cv-00187-LAS
Senior Judge Loren A. Smith

**FILED UNDER SEAL**

### DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this cross motion for judgment on the administrative record and response to the motion of plaintiff Telos Identity Management Solutions, LCC (Telos) for judgment on the administrative record in this bid protest in which Telos challenges the contract award to Idemia Identity & Security USA, LCC (Idemia) by the United States Department of Homeland Security (DHS), Transportation Services Administration (TSA or the agency). For the reasons explained in this motion, the Court should deny Telos's motion and grant judgment in favor of the Government.

## QUESTIONS PRESENTED

1.      Whether TSA reasonably concluded that Idemia did not make a material misrepresentation in its proposal.

2.      Whether TSA reasonably determined that Idemia is a responsible contractor.

3.      Whether TSA acted lawfully and within its discretion to make only one award.

4.      Whether TSA rationally evaluated Telos's management and technical proposals.

5.      Whether TSA adequately stated its requirements in the solicitation.

6.      Whether Telos is entitled to a permanent injunction.

## SUMMARY OF ARGUMENTS

TSA's award to Idemia was neither arbitrary, nor capricious, nor was it irrational.  As hard as it may be for Telos to believe, there was no flaw in this procurement that led TSA to award the contract to Idemia.  The agency thoroughly evaluated the offerors' proposals and determined, in its discretion, that Idemia, not Telos, offered the proposal representing the best value to the Government.  Telos challenges TSA's highly discretionary, technical determinations about Telos's proposal and TSA's thoroughly analyzed determination that Idemia is a responsible contractor—disagreements that have no basis for the Court to overturn TSA's award to Idemia.  Telos also contends that TSA violated the law by awarding only one contract and that TSA failed to state its requirements in the solicitation—allegations that are both untimely and unavailing.

Telos first complains that Idemia is ineligible for award because it made a "material misrepresentation" in its proposal by falsely certifying that its "principals" were not presently "debarred or declared ineligible for award of contracts by any Federal agency."  Telos's argument regarding the alleged "material misrepresentation" is completely off base.  Idemia did

not make a misrepresentation—the facts demonstrate that Idemia's certification was accurate. Moreover, Telos fails to cite to any evidence demonstrating that Idemia's alleged false certification was made with an intent to deceive the Government; rather, the evidence shows Idemia acted in good faith by providing to TSA relevant information regarding a World Bank debarment. Moreover, TSA was fully aware of, and relied on, the relevant information underlying Idemia's certification. Therefore, any alleged misrepresentation was not material.

Based on a wholly counterfactual theory, Telos next challenges TSA's responsibility determination. According to Telos, TSA relied on Idemia's material misrepresentations in determining that Idemia is a responsible contractor. From this, Telos argues that TSA's award to Idemia would have patently absurd consequences because finding Idemia eligible for award would allow bidders to avoid disclosing debarred entities by simply inserting a holding company between the bidder and the debarred entity. The record shows just the opposite: Idemia did not avoid disclosing facts; rather, Idemia provided to TSA comprehensive information regarding the World Bank debarment and its corporate structure. That Telos is unhappy TSA twice made an affirmative responsibility determination for Idemia, even after TSA's consideration of Telos's debarment argument on voluntary remand, is no grounds for overturning this determination.

Telos also fashions an argument regarding TSA's alleged misunderstanding of the definition of "principal." But Telos's technical argument is not persuasive because TSA fully analyzed the actual relationship between Idemia and its affiliates, and determined that Idemia is a responsible contractor. This determination would be no different even under Telos's definition of "principal" because the contracting officer determined that Idemia's affiliate corporations— whether technically considered "principals" or not—do not bear on Idemia's responsibility.

Moreover, Telos also fails to show Idemia falsely certified that its "principals" are not "debarred or declared ineligible for award of contracts by any Federal agency."

Finally, with respect to Telos's second argument, Telos's "patently absurd" argument is devoid of reality. The contracting officer fully analyzed an extensive record on remand and determined that sufficient separation exists between Idemia and any bad actors. This is not a case, as Telos suggests, where a corporation set up holding companies to shield itself from liability or to hide information from the Government.

Third, Telos complains that TSA's decision to make only one award was irrational. Telos has waived its ability to make this objection by failing to raise it prior to contract award. Telos cannot sit on its rights to challenge what it believes to be an unlawful solicitation, only to later complain in costly after-the-fact litigation. But even if the Court considered Telos's argument, it is inconsistent with the solicitation, which clearly and repeatedly states that this is a single-award procurement. Telos also complains that TSA violated the TSA Act by making only one award. Telos completely disregards the plain language of the TSA Act, which specifically states that the requirements in the Act should be performed "in addition to" those of this contract—not in lieu of this contract.

Fourth, Telos argues that TSA irrationally evaluated Telos's management and technical proposals. Telos cherry picks portions of its proposal in attempt to demonstrate that it fully responded to the Request for Proposal. However, in most instances, Telos cites information as "responsive" from one volume of its proposal to suggest that it adequately responded in a different volume of its proposal. Telos essentially argues that because TSA did not comb through Telos's proposal and find responsive information elsewhere in the proposal, TSA's evaluation was irrational. But under the plain language of the solicitation, Telos was required to

4

include responsive information in the appropriate section. TSA was not irrational for holding Telos to the terms of the solicitation.

Finally, Telos argues that TSA unreasonably determined that Telos failed to comply with the requirements of the solicitation because certain requirements were not stated. Telos is too late. Had it believed that TSA failed to state certain requirements in the solicitation, Telos should have protested this deficiency prior to the award. It did not. Moreover, Telos is incorrect—the solicitation clearly states the requirements to which Telos now objects.

Telos's arguments implicate purely discretionary determinations to which TSA is owed significant deference. Telos fails to meet its heavy burden of showing that TSA's decisions were irrational, and therefore, the Court should deny Telos's protest.

## STATEMENT OF FACTS

### I. Nature Of The Case

Telos filed this post-award bid protest challenging the evaluation of proposals and subsequent award of the single-award IDIQ contract under Solicitation No. 70T02018R9NOIA073.

### II. Statement Of Facts

#### A. The Original Universal Enrollment Services Contract

The Transportation Security Administration (TSA) has a national security mission to safeguard the nation's transportation systems and ensure the freedom of movement for people and commerce. *See, e.g.*, AR1:4; AR2:11; AR13:152; AR27:585; AR38.1:2223; AR56;5025. [1] To meet this mission, TSA's Office of Intelligence and Analysis (TSA OIA) conducts "security

[1] "AR__:____" represents the administrative record, with the number before the colon referring to the tab number and the number after the colon referring to the page numbers.

threat assessments" to determine whether an applicant seeking access to transportation environments, critical infrastructure, and sensitive information or materials poses or is suspected of posing a threat to transportation infrastructures or national security. *Id.* TSA OIA is responsible with providing a method for workers and travelers to enroll for a security threat assessment. *See, e.g.*, AR13:153. A "security threat assessment" enrollment generally involves the applicant providing biographic and biometric information, proof of identity and immigration documentation, and payment of fees. *Id.*; *see also* AR1:4; AR2:11.

Several of TSA's largest security threat assessment programs include the Transportation Worker Identification Credential (TWIC) Program, the Hazardous Materials Endorsement (HME) Threat Assessment Program, the Alien Flight Student (AFSP) Program, and the TSA PRE√® Application Program. *See, e.g.*, AR1:4; AR2:11; AR13:152; AR27:585; AR38:2224; AR56:5025. In support of these critical security programs, TSA provides an "enrollment services infrastructure" to enable applicants to enroll for a security threat assessment. *Id.* The contract award challenged in this bid protest is TSA's Universal Enrollment Services (UES) Contract, which provides this enrollment services infrastructure.

In 2012, TSA competitively awarded the first "UES contract" (HSTS02-12-C-TTC702) to provide a full suite of enrollment services inclusive of all enrollment technology and operations infrastructure for its security threat assessment programs (TWIC, HME, AFSP, TSAPRE√®). *See, e.g.*, AR27:584; AR56:5025-26. MorphoTrust USA was selected as the UES provider. *See, e.g.*, AR13:152.

The original UES contract expired in September 2017. *See, e.g.*, AR27:584; AR56:5025-26. The UES contract that followed is a bridge contract (HSTS02-17-C-OIA095) with Idemia Identity and Security USA (Idemia IS USA), and is currently in place to ensure transition and

6

continuity of operations through March 4, 2020.  *Id.*  Efforts to issue a UES re-compete solicitation (to replace the expiring UES contract) initiated in January 2016.  Telos challenges the award of that contract here.

**B.**     **Approval For A Single Contract Award**

TSA's decision to make a single award, rather than multiple awards, in the UES re-compete IDIQ contract is documented in TSA's Acquisition Plan.  *See* AR Tab 27.  In May 2017, TSA requested DHS approval of TSA's plan for a single award IDIQ contract.  *See* AR57:5026.  The DHS Acting Deputy Chief Procurement Officer (DCPO) conditionally approved award to a single vendor.  *Id.*; *see also* AR28:630.  As part of the conditional approval, the DHS Acting DCPO requested that the TSA formal Acquisition Plan specifically explain the "major buckets of work" relating to the UES requirements for "why these cannot be broken out, competed and performed by more than one (1) contractor" or why "multiple contracts (mission related) are not feasible."  AR28:630.  DHS also requested that the formal Acquisition Plan include a justification for a proposed 10-year period of contract performance.  *Id.*

TSA submitted its formal Acquisition Plan to DHS in February 2018.  AR27.  The Acquisition Plan discusses and provides justification for TSA's intent to establish a single award IDIQ contract, as successfully utilized on the then-current, but soon-to-expire UES contract. AR27:585.  TSA described that its historical experience with multi-vendor enrollment services for multiple security programs showed, among other things, increased complexity to the processes, lack of standardization, and increased costs and confusion to the public.  *Id.*  The single vendor solution reduced the public confusion, reduced costs, standardized processes, and mitigated IT and cybersecurity risks.  *Id.*  The formal Acquisition Plan thoroughly justified

7

TSA's planned use of a single award IDIQ contract for possibility of ten years contract performance. *Id.*

On February 23, 2018, DHS signed and approved the UES formal Acquisition Plan. *See, e.g.*, AR56:5027. DHS Acting DCPO authorized (without any conditions) TSA to acquire its UES contract via a single award IDIQ with a ten-year ordering period. AR28:638.

C.  **The Solicitation**

On March 7, 2018, TSA issued its Request for Proposals for the UES procurement. AR36; *see also* AR56:5027. The solicitation sought to award a single IDIQ contract with a minimum order of $1,800,000.00, including a one-year base period and an option of nine one-year options, for a maximum period of ten years. AR 822. The solicitation also sought to issue a Task Order (Task Order 1) award at the same time as the IDIQ award. Task Order 1 would be awarded with a potential for a ten-year period of performance with a three-year base period, two (2-years) options and three (1-year) options. AR40:2481-82. TSA subsequently issued Amendments 0001, 0002, and 0003. AR38; *see also* AR56:5027; AR39; AR40.

Relevant here, language throughout the solicitation indicates that the Government "intends to award a *single* IDIQ contract." *See, e.g.*, AR36:926-27 (emphasis added). The solicitation instructed offerors to submit proposals in six volumes: (1) Cover Letter, Tables of Contents, Executive Summary; (2) Direct Channeler Requirement; (3) Management and Implementation Approach and Capabilities; (4) Technical Approach and Capabilities; (5) Past Performance; and (6) Price and Labor Rates. AR36:917-24. In the Instructions To The Offerors, TSA explained precisely which "evaluation factors and proposal volumes" the offeror must address. AR36:917. In the instructions detailing what information to include in each volume,

TSA provided citations to the correlating Statement of Work, Task Order, and Request for Proposal.  AR36:917-25.

Importantly here, the solicitation instructed offerors, "Each volume must be separate and complete in and of itself, so that the evaluation of one volume may be accomplished independently of the others."  AR36:916.  The solicitation further provides that "Information not in its appropriate section or not appropriately referenced will be assumed to have been omitted." *Id.*  And although an offeror need not unnecessarily repeat information, if more than one section requires the same information, the offeror must reference the other section by identifying "the section and page number where the [responsive] information can be found."  *Id.*

As part of its proposal, potential contractors were required to make certain certifications. The certification relevant to this protest states, in part:

> Certification Regarding Responsibility Matters (OCT 2015)
>
> (a) (1) The Offeror certifies, to the best of its knowledge and belief, that -
>
> > (i) The Offeror and/or any of its Principals -
> >
> > > (A) Are ( ) are not ( ) presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency . . . .

AR41:2662 (quoting FAR 52.209-5); *see also* FAR 52.212-3 (same).

The solicitation states that TSA would make the "single-award contract to the responsive and responsible firm whose proposal demonstrates the best value to the Government, price and non-price factors considered."  AR36:927.

### D.  Proposal Evaluations And Award Decision

TSA received four proposals in response to the UES solicitation.  *See* AR41 (Idemia); AR42 (Maximus Federal Services, Inc.); AR43 (Teleperformance USA); AR44 (Telos).  After offerors submitted final proposals, TSA evaluated the proposals from April to mid-September 2018.  See AR45-49.

On January 7, 2019, TSA issued the notice of contract award to Idemia.  AR59:6870-71.

### E.  Voluntary Remand At Court Of Federal Claims

Telos filed a bid protest in this Court challenging the award to Idemia.  Telos argued, among other things, that (1) TSA failed to deem Idemia ineligible for award due to a material misrepresentation in its proposal and use of ineligible subcontractors, and (2) TSA's responsibility determination of Idemia was improper.  ECF No. 1.  Upon learning of Telos's allegations that Idemia materially misrepresented information in its proposal, TSA moved for a voluntary remand.  The Court granted TSA's unopposed motion for a voluntary remand to reconsider the award decision, including Idemia's affirmative responsibility determination.  ECF No. 27.

To assess whether Idemia made a material misrepresentation in its proposal, and to determine whether Idemia is a responsible contractor, the contracting officer solicited additional information from Idemia, including:



10



The contracting officer also gathered other documents. *Id.*

Upon review of this information, the contracting officer provided a detailed analysis of whether this information demonstrated that Idemia made a material misrepresentation, and how this information relates to or affects Idemia's responsibility as a Federal government contractor. The contracting officer considered, for example, all of the facts that provided an indicia of separation—business, organizational, or financial separation—between Idemia and the entities that were debarred by the World Bank. *Id.*

Ultimately, upon reviewing all of the additional information, the contracting officer issued, for the second time, an affirmative responsibility redetermination to Idemia. AR81. Based on her review of the "extensive record" on remand, the contracting officer determined, in part:

1. Idemia is a responsible contractor.

2. Neither Idemia nor its parent company Morpho USA were debarred by the World Bank.

3. Idemia was acquired as part of a distinct group of Morpho Companies, separated from the activities of Oberthur group companies (including Idemia American Corp. and Idemia France SAS).

4. Advent International Corporation is the ultimate owner and controlling shareholder of Idemia.

5. There is substantial evidence demonstrating a distinct separation between Idemia and both Idemia American Corp. and Idemia France SAS.

AR81. The contracting officer also concluded that Idemia did not misrepresent or falsify

its certification in its SAM registration. *See* AR81:7598.

After TSA issued this responsibility redetermination, Telos filed an amended complaint

in this Court, raising, for the most part, the same claims that it did in the initial complaint.

## ARGUMENT

### I.    Standard Of Review In A Bid Protest

In a bid protest, the question is whether the challenged agency action was arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law. 28 U.S.C.

§ 1491(b)(1), (4); 5 U.S.C. §§ 702, 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v.*

*United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Contracting officers, however, are "entitled

to exercise discretion upon a broad range of issues confronting them in the procurement

process." *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010). Thus,

this Court applies a highly deferential rational basis review to procurement decisions, *id.*, and a

protestor bears the heavy burden of showing that the award decision had no rational basis,

*Garufi*, 238 F.3d at 1333.

Given these principles, the Court will uphold the agency's action unless the protestor can

prove that the agency "'entirely failed to consider an important aspect of the problem, offered an

explanation for its decision that runs counter to the evidence before the agency, or [issued a

decision that] is so implausible that it could not be ascribed to a difference in view or the product

of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir.

2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  Indeed, the hurdle of establishing unreasonableness or abuse of discretion is a high one.  *Ravens Group, Inc. v. United States*, 78 Fed. Cl. 390, 396 (2007).  It is the plaintiff, not the Government, who bears the burden of demonstrating that an agency's action was unreasonable. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 995-96 (Fed. Cir. 1996); *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed. Cir. 1988).

If an agency's decision "evinc[es] rational reasoning and consideration of relevant factors" it must be upheld.  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009).  In this regard, the Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions.  *Bowman Transp., Inc., v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974); *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).

## II.     TSA Reasonably Concluded That Idemia Did Not Make A Material Misrepresentation

Telos argues that TSA improperly failed to deem Idemia ineligible for award based on Idemia's alleged material misrepresentation to TSA that Idemia nor any of its principals are debarred or declared ineligible for the award of a contract by any Federal agency.  Pl. Mot. at 12. Telos paints Idemia as a contractor attempting to win a Federal contract through misrepresentation and deceit.  Telos argues that because TSA relied on Idemia's "material misrepresentation," the Court should find Idemia ineligible for award.  In fact, Telos asks the Court to not "set in stone a policy that would enable unscrupulous bidders to evade the disclosure requirements of the [Federal Acquisition Regulation] [(FAR)]."  Pl. Mot. at 19.  But Telos's argument is unavailing.  In order to establish that Idemia made a material misrepresentation,

Telos must show that (1) Idemia made a false statement, (2) TSA relied upon the false statement in awarding the contract to Idemia, and (3) Idemia intentionally made the false statement. *See, e.g.*, *Bannum, Inc. v. United States*, 119 Fed. Cl. 291, 307 (2014), *aff'd* 616 F. App'x 420 (Fed. Cir. 2015) (collecting cases); *Synetics, Inc. v. United States*, 45 Fed. Cl. 1, 16 (1999) (the alleged misrepresentation must be "made with intent to deceive or mislead"). Telos fails to establish any of these three elements.

### A.    Idemia Did Not Make A False Statement

Telos argues that Idemia made a material misrepresentation by certifying that neither Idemia nor its principals are presently debarred or declared ineligible for the award of contracts by any Federal agency. Pl. Mot. at 13. It is undisputed that Idemia **is not** debarred or declared ineligible for award of contracts by any Federal agency. As the contracting officer explicitly noted in the responsibility determination, the System for Award Management (SAM) lists Idemia as eligible for award. AR58:6803 (citing SAM.gov results, AR58:6866-69). The question, then, is whether Idemia's "principals" are "debarred or declared ineligible for the award of contracts by any Federal agency." The answer is no, and Telos's argument to the contrary is based on a misunderstanding of one Federal agency's guidelines.

Telos argues that Idemia made a material misrepresentation by certifying that neither Idemia, nor its principals, Idemia American Corp. and Idemia France SAS, are ineligible for award of contracts by a Federal agency, specifically, by the Millennium Challenge Corporation (MCC). Pl. Mot. at 16-17; AR41:2662. Telos cites to the MCC's Program Procurement Guidelines that state: "A firm declared ineligible by The World Bank for any reasons . . . shall by ineligible to be awarded an MCC-funded contract during the period of time that the firm is sanctioned by the World Bank." Pl. Mot. at 17. Telos reasons that because Idemia American

14

Corp. and Idemia France SAS are debarred by the World Bank, the MCC's Program Procurement Guidelines render Idemia American Corp. and Idemia France SAS ineligible for the award of contracts by the MCC. Pl. Mot. at 16-17. This argument is premised on a vast misunderstanding of the MCC.

The MCC funds <u>foreign countries</u> that have demonstrated a "commitment to just and democratic governance, investment in its people, and economic freedom as measured by different policy indicators." *See* Millennium Challenge Corporation, Who We Fund, *available at* https://www.mcc.gov/who-we-fund. The foreign country selected for a MCC assistance program establishes a Millennium Challenge Account Entity (MCA Entity), *i.e.*, a separate legal entity, responsible for awarding and administering the MCC-funded grant. When procuring items funded by the MCC grant, the MCA Entity must comply with the MCC Program Procurement Guidelines. Under the Guidelines, the MCA Entity cannot award a MCC-funded contract to a firm declared ineligible by the World Bank.

Telos would have the Court believe that because a firm is ineligible for award of a MCC-funded contract by the MCA Entity, that is the equivalent of the firm being ineligible for award of contracts by a *federal agency*. But that is nonsensical because a MCA Entity is <u>not a federal agency</u>, it is a separate legal entity established by a <u>foreign government</u>.[2]

---

[2] In support of this argument, Telos cites to *Algese 2 S.C.A.R.L. v. United States*, 125 Fed. Cl. 431, 436-37 (2016), for the proposition that the Court held "debarment by the World Bank made awardee's affiliate [] ineligible for contracts from at least one federal agency, the MCC." But this case was later vacated and thus is not persuasive authority. *See Algese 2*, 127 Fed. Cl. at 500. Even so, as explained in this motion, this statement is inaccurate. A World Bank debarment does not make a potential contractor ineligible by the MCC—at most, it would make the potential contractor ineligible for award by the MCA Entity.

15

In fact, the MCC Program Procurement Guidelines do not even apply to the MCC's procurements. *See* MCC Program Procurement Guidelines, Purpose And Scope ¶ 1, March 6, 2019, https://www.mcc.gov/resources/doc/program-procurement-guidelines ("The principles, rules, and procedures set out in these Program Procurement Guidelines (Guidelines or PPG) shall govern the conduct and administration by the Millennium Challenge Account Entity (MCA Entity) or other entity, *excluding the Millennium Challenge Corporation (MCC)* of the procurement of the goods, works, consulting, or non-consulting services that need to be acquired to implement the Projects funded by MCC . . . .") (emphasis added).

And what's more, Telos asks the Court to conclude that Idemia and its principals are "declared ineligible," as interpreted under FAR 52.209-5, because of *Telos's* application of MCC's Procurement Program Guidelines to the facts of this case. But the only reasonable interpretation of "declared ineligible . . . by any Federal agency" in the FAR 52.209-5 certification is that *the Federal agency* has made the declaration of ineligibility.

In sum, Telos's unilateral attempt to declare Idemia ineligible for award of a contract by the MCC is entirely unpersuasive. Not only do the MCC Procurement Program Guidelines relate to ineligibility from a contract by a foreign corporation—and not a Federal agency—but Telos's interpretation of FAR 52.209-5 is unreasonable. Here, Telos fails to point to any evidence that a Federal agency has declared Idemia or its principals ineligible for award of a contract. Thus, Telos has failed to show that Idemia's FAR 52.209-5 certification constitutes a material misrepresentation.

**B.** **Telos Has Not Shown That Idemia's Certification Was Made With An Intent To Deceive The Government**

Telos's argument that Idemia made a material misrepresentation fails for the additional reason that Telos failed to provide *any* evidence—circumstantial or otherwise—that Idemia's alleged misrepresentation was "made with intent to deceive or mislead." *Synetics, Inc. v. United States*, 45 Fed. Cl. 1, 16 (1999); *Supreme Foodservice GmbH v. United States*, 112 Fed. Cl. 402, 425 (2013) (requiring "intentional falsity"). "Without some proof that [awardee's] actions in preparing its proposal were sinister, not just deficient . . . , [plaintiff's] claim that [awardee] wrongfully misrepresented its ability to perform the contract fails." *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 468-69 (2001). Indeed, this Court has recognized that "it is quite common for proposals to fall short of their assertions; it is not something to be punished unless the errors were willful or egregious." *Id.* at 468.

Telos has cited no evidence that Idemia intended to deceive the Government; its argument is premised on its own conclusory statement that Idemia's representation was knowingly and intentionally false. *See* Pl. Mot. at 17 (citing no evidence). That simply is not sufficient. Moreover, it would be puzzling to conclude that Idemia intended to deceive or mislead the Government regarding the debarment given that Idemia provided *all* of the pertinent information regarding the details of the debarment. And after the contracting officer independently assessed the debarment and Idemia's corporate structure, she did not find any evidence that Idemia had misled the Government. *Northrop Grumman*, 50 Fed. Cl. at 469 (explaining the Government "had ample time to see for itself whether" the contractor made a misrepresentation).

17

Telos argues that Idemia "double down[ed]" on its misrepresentation by not changing its certification during the voluntary remand. Pl. Mot. at 17. If anything, that Idemia did not change its certification despite disclosing all of the relevant information regarding the debarment demonstrates not that Idemia intended to deceive the Government about the debarment, but that Idemia believed in the validity of its certification. Moreover, the administrative record suggests that Idemia was abundantly forthright in disclosing information to the Government that could be adverse to Idemia's interests, further suggesting that Idemia did not intend to deceive or mislead the Government. *See* AR76:7306.

Thus, because Telos has not shown that Idemia intended to deceive the Government, and no evidence suggests otherwise, at most Idemia's proposal contained a miscertification—not a material misrepresentation. But a miscertification is not enough to overturn the award.

This situation is similar to that faced by the Comptroller General in a bid protest involving an issue of whether an awardee was ineligible for award by making a false certification. *Universal Tech. Inc.; Spacecraft, Inc.*, B-248808 (Comp. Gen.), 1992 WL 278888, at *8 (1992). In *Universal Technologies, Inc.*, the awardee, Marvin, certified that it had not been convicted within the past 3 years of making false statements or falsifying documents to the Government. *Id.* at *9. After the award was protested, Marvin admitted that this statement was false because Marvin and one of its principals pled guilty to "Attempt to Evade or Defeat Tax" and "Fraud and False Statements." *Id.* Marvin explained that it did not intentionally miscertify—its certification was based on Marvin's misinterpretation of the certification. Marvin

mistakenly interpreted a dependent clause in the certification.[3]  The Air Force argued that

Marvin's misinterpretation of the certification was reasonable, and, in any event, that Marvin's

failure to properly disclose and certify its tax convictions did not affect the contracting officer's

affirmative responsibility determination, because the contracting officer already considered all of

the relevant information regarding the tax conviction.  *Id.*  The Comptroller General held that,

although Marvin's certification was erroneous, Marvin is not ineligible for award because the

false certification was not made in bad faith, nor did it materially influence the contracting

officer's affirmative determination of Marvin's responsibility.  *Id.*  Specifically, because the

agency had already considered the tax convictions, the contracting officer's affirmative

determination of responsibility would not have been different, even if Marvin checked the

correct box.  *Id.* at *10.

---

[3] The certification said this:

"(a)(1) The Offeror certifies, to the best of its knowledge and belief, that--
(i) The Offeror and/or its Principals--

(B) Have [ ] have not [ ] within a [3]-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property.

Marvin believed the certification only encompassed offenses that were related to or involved wrongdoing in connection with federal, state, or local contracts.  The Comptroller General held that this was not a reasonable interpretation because "[t]he first two of these dependent clauses limit the listed violations to those relating to acquiring or performing public contracts or the submitting of offers; the last clause does not condition the listed violations to those relating to public contracts.  [Therefore], the only reasonable interpretation of the last dependent clause is that the listed violations are not restricted to those relating to public contracts.

19

Similarly, here, at most Idemia reasonably misinterpreted the definition of "principal" when making its certification.[4] The record demonstrates that Idemia did not believe that its "principals" included Idemia American Corp. or Idemia France SAS. *See* AR 7303-06. A reasonable (or unreasonable) misinterpretation of the certification does not amount to a material misrepresentation—it amounts to a miscertification. The contracting officer's affirmative responsibility determination with full knowledge of the facts underlying Idemia's certification ensured that the Government need not find it necessary to deem Idemia ineligible to protect the Government's interest. Thus, contrary to Telos's arguments, this miscertification (at best) does not prevent award to Idemia. *Universal Tech.*, 1992 WL 278888, at *10.

C.     **TSA Did Not Rely On Idemia's Statement And Therefore It Could Not Have Been "Material" To The Responsibility Determination**

Telos also fails to show that the alleged misrepresentation was material. A misrepresentation is material only if the contracting officer *relied on it* in forming her opinion. *Algese 2 S.C.A.R.L. v. United States*, 127 Fed. Cl. 497, 500 (2016). Indeed, "[r]eliance on a misrepresentation is of critical importance" and the lack of reliance means the misrepresentation is not material. *Acrow Corp. of Am. v. United States*, 97 Fed. Cl. 161, 176 (2011) ("Reliance on a misrepresentation is of critical importance . . . .").

Telos seems to forget that this case was voluntary remanded so the contracting officer could gather and analyze information relevant to the debarment, rather than merely relying on Idemia's certification. In fact, in the contracting officer's March 2019 responsibility determination of Idemia, the contracting officer expressly states that she relied on her personal

---

[4] But even this argument is generous to Telos, because even if Idemia was wrong about what constitutes a "principal," Telos still cannot show that the "principals" were debarred or declared ineligible for a contract by any Federal agency.

knowledge of the matters, which she formed after analyzing the "extensive record" detailing
Idemia's corporate structure and relationships and information relating to the World Bank
debarment. *See* AR81:7598; *Acrow*, 97 Fed. Cl. at 176 (explaining that the court looks to the
contracting officer's statement to determine what information she relied on). The contracting
officer explained that she relied on corporate documents that reflect organizational, business, and
financial relationships; articles of incorporation; affidavits; public information; and a Negotiated
Resolution Agreement from the World Bank. *See* AR81:7588-99. And when determining the
effect of the debarment on Idemia's responsibility as a contractor, the contracting officer
considered the specifics of the debarment and documentation regarding Idemia's corporate
relationship with Idemia American Corp. and Idemia France SAS. Ultimately, after considering
this information, and weighing the impropriety of debarment and its effect on and relation to
Idemia, TSA determined Idemia is a responsible contractor.

Telos's insistence on maintaining that a material misrepresentation exists—despite
knowing that the contracting officer expressly considered information beyond Idemia's
certification and independently analyzed the debarment issue in lieu of blind reliance on
Idemia's statement—defies logic. Predictably, Telos fails to articulate how the alleged
misrepresentation could have been material in light of the contracting officer's independent
analysis. And because TSA individually analyzed, and thus did not rely on, this information,
there could not have been a *material* misrepresentation. *Acrow Corp.*, 97 Fed. Cl. at 175
("Inaccurate statements themselves—that are not relied upon by the contracting officer—
logically cannot cause the determination to be irrational.").

## III.   **TSA Reasonably Determined Idemia Is A Responsible Contractor**

The contracting officer reasonably determined that Idemia is a responsible contractor. Before awarding a contract, the contracting officer must make "an affirmative determination of responsibility," 48 C.F.R. § 9.103(b), which includes a finding that, among other things, the potential contractor has a "satisfactory record of integrity and business ethics," 48 C.F.R. § 9.104-1.

A protestor faces a "high hurdle" in challenging a responsibility determination. *Supreme Foodservice GmbH v. United States*, 112 Fed. Cl. 402, 415 (2013). In analyzing responsibility determinations, Federal courts have long recognized that contracting officers enjoy "wide discretion" in both making "responsibility determinations and in determining the amount of information that is required to make a responsibility determination." *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002). "Responsibility determinations are 'practical, not . . . legal determination[s], based primarily on the contractor's suitability for a particular job.'" *OSG Prod. Tankers LLC v. United States*, 82 Fed. Cl. 570, 575 (2008) (quoting *Peter Kiewit Sons' Co. v. United States Army Corps of Eng'r*, 714 F.2d 163, 167 n.18 (D.C. Cir. 1983)). Simply put, such "determinations 'are complicated business judgments' and . . . the court will not second guess them where there is supporting evidence." *Remington Arms Co. v. United States*, 126 Fed. Cl. 218, 228 (2016) (quoting *Bender Shipbuilding*, 297 F.3d at 1362); *see also NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 610 (2013). Such discretion is appropriate because the agency "must bear the brunt of difficulties experienced in obtaining the required performance" in the event of an adequate responsibility assessment. *News Printing Co. v. United States*, 46 Fed. Cl. 740, 746 (2000) (quoting *House of Comm'ns & Graphics*, B-245920, 1992 WL 55054, at *2 (Comp. Gen. March 4, 1992)).

22

In its motion for judgment upon the administrative record, Telos fails to acknowledge this applicable legal standard or to explain why this Court should disturb the contracting officer's broad discretion in making such a business decision. Instead, in its motion, Telos simply asks the Court to reweigh evidence that the contracting officer already considered and substitute Telos's analysis for that of the contracting officer. But here, the contracting officer properly weighed all relevant facts and accompanying risks, and, in assessing Idemia's responsibility for the second time, specifically addressed the issues that Telos believes bear poorly on Idemia's responsibility. AR75-81:7300-7588.

For example, in the contracting officer's March 2019 responsibility determination, the contracting officer analyzed the corporate relationship between Idemia and both Idemia France SAS and Idemia American Corp., and "traced the path to [Idemia's] current ownership" through corporate documentation. AR81:7594. Based on the corporate documentation that the contracting officer analyzed, she determined that Advent International Corporation is Idemia's principal investor and owner. AR81:7594. The contracting officer also considered the unique facts here that establish separation between Idemia and the entities debarred by the World Bank, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ separation between two distinct groups of companies—the Morpho Group (includes Idemia) and the OT Group (includes Idemia American Corp. and Idemia France SAS). AR81:7588-98. She analyzed the management and supervision responsibilities of the various entities and concluded that Idemia is not managed or supervised by the debarred entities, and she considered information regarding the functions of the Board of Directors and concluded that Idemia operates independently with regard to business affairs and day-to-day operations. *Id.* The contracting officer articulated a rational basis for her

23

determination based on extensive citation to underlying documents. *Id.* Thus, the determination should remain undisturbed.

Telos completely disregards this rational determination and instead argues that TSA erred in finding Idemia responsible for two reasons: (1) the contracting officer misunderstood the terms "principal" and "owner," and (2) Idemia IS USA is controlled by Idemia American Corp.

Telos first argues that the contracting officer misunderstands the definitions of "principal" and "owner." Because of that misunderstanding, Telos contends that the contracting officer improperly determined that Idemia did not make a material misrepresentation when it certified that Idemia nor its principals were not debarred or ineligible to receive a contract by a Federal agency. Pl. Mot. at 20-23. From there, Telos argues that the contracting officer's responsibility determination was arbitrary, capricious, an abuse of discretion, or not in accordance with law. But even if Idemia's and TSA's interpretation of "principal" is incorrect—and "principal" includes every indirect corporate owner—Telos's argument still fails because "principals" or not, Idemia, Idemia American Corp., and Idemia France SAS are not "declared ineligible for contracts by any Federal agency," and thus Idemia did not make a misrepresentation. Therefore, this argument has no bearing on the validity of the contracting officer's affirmative responsibility determination.

Second, in attempt to substitute its judgment for that of the contracting officer, Telos argues that Idemia American Corp. controls Idemia, and therefore, the contracting officer should have made a finding that Idemia is not a responsible contractor. But even if Idemia American Corp. does control Idemia, it does not follow that the contracting officer's responsibility determination is arbitrary or capricious where, as here, the contracting officer articulated a rational basis to reach that determination, supported with documentation from the administrative

24

record. *Bender Shipbuilding*, 297 F.3d at 1362. Even assuming, for the sake of argument, that

Idemia's corporate owners, such as Idemia American Corp. and Idemia France SAS, are

debarred by the World Bank, the contracting officer has full discretion to determine that Idemia

is responsible—as it did here.

But even if the Court were to reweigh the evidence, Telos's argument that Idemia

American Corp. controls Idemia is belied by the record. ██████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████████ explicitly demonstrates that

Idemia and Idemia American Corp. are part of two distinct groups of companies. AR81:7593-

96. The contracting officer analyzed corporate documentation regarding the relationship

between Idemia and Idemia American Corp. and ████████████████, both of which the

contracting officer determined demonstrate a clear separation between Idemia and Idemia

███████████████████████████████████████

American Corp. AR81:7596-97. Telos's argument is nothing more than an invitation to review *de novo* the contacting officer's determination by reweighing the evidence and substituting Telos's opinion for that of the contracting officer's opinion.

In sum, even if Telos and this Court disagree with TSA's responsibility assessment, TSA considered all the relevant information and provided a rational basis for its responsibility determination, and the Court should decline Telos's invitation to substitute its own judgment for that of the agency. *Bender Shipbuilding*, 297 F.3d at 1362; *Watts-Healy Tibbitts*, 84 Fed. Cl. at 258 ("Even though the Court might not agree that it is in the best interest of the United States to contract with a company that has been sanctioned not only once, but on at least three separate occasions for bid rigging, the Court may not substitute its judgment for that of the agency.").

## IV. TSA Acted Lawfully And Within Its Discretion To Make Only One Award

Telos argues that TSA erred in deciding to make only one award because it (1) failed to make a determination that would convert its "conditional approval" into a final approval of a single award, (2) never made the required determination that a FAR multiple award preference exception actually applied, and (3) failed to include any consideration of the TSA Act's mandate to introduce competition for the PreCheck program. Telos's first two arguments simply ignore record evidence that establish TSA received the necessary FAR-required approval to proceed with a single contract. Telos's third argument is a non-starter because the TSA Act does not apply here. But the Court need not reach any of Telos's arguments because it waived its right to make this claim.

### A. Telos Has Waived Its Claim

"[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its

ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

Telos argues that TSA's award of only one contract violates the TSA Act, which requires TSA to establish competition among multiple private sector providers. Pl. Mot. at 30. Telos has waived this claim because it was required to file a pre-award protest to advance its claim that TSA was required to make more than one award. Telos acknowledges that the TSA Act became law on October 5, 2018, Pl. Mot. at 30, and the agency did not award the contract until January 8, 2019. Thus, Telos had an adequate opportunity to bring a claim regarding the agency's intent to make a single award. Moreover, this alleged error was patent. The Request for Proposal repeatedly states that TSA will make only one award, *e.g.*, AR36:926-927, 937, 939, and Telos argues that the TSA Act plainly requires TSA to make more than one award. During the intervening months between the enactment of the TSA Act and the award of the contract, TSA devoted substantial resources to obtain the best value for the United States by evaluating the proposals. Telos silently waited for the agency to make the award, providing no indication that it believed TSA's proposal was in conflict with the TSA Act requirements. Only after TSA awarded the contract to Idemia, rather than Telos, did Telos raise this complaint. Because it waited, Telos waived its opportunity to challenge this issue. Indeed, the *Blue & Gold* waiver rule applies even when a contractor has no opportunity to challenge the solicitation before "the close of the bidding process." *Comint Sys. Corp. v. United States*, 700 F.3d 1377, 1392 (Fed. Cir. 2012).

**B.      TSA Complied With The FAR In Making A Single Award**

Even if the Court were to consider Telos's arguments, none have merit. First, Telos incorrectly argues that TSA failed to receive final approval to make a single award and never

27

made the required determination that a multiple award preference exception applied. Under FAR

16.504, a task order or delivery order contract in an amount estimated to exceed $112 million

may only be awarded to a single source if the head of the agency determines in writing that—

> **(i)**     **The task or delivery orders expected under the contract are so integrally related that only a single source can reasonably perform the work;**
>
> (ii)    The contract provides only for firm-fixed price (see 16.202) task or delivery orders for—
>> A.    Products for which unit prices are established in the contract; or
>> B.    Services for which prices are established in the contracts for the specific tasks to be performed;
>
> (iii)   Only one source is qualified and capable of performing the work at a reasonable price to the Government; or
>
> (iv)    It is necessary in the public interest to award the contract to a single source due to exceptional circumstances.

FAR 16.504(c)(1)(ii)(D) (emphasis added).

TSA obtained the necessary approval from the head of the agency (DHS), in full

compliance with FAR 16.504, to award a single award rather than multiple awards. *See*

AR27:596-601; AR28:632-38; AR56. The record demonstrates that in May 2017, TSA initially

requested DHS approval of TSA's plan for a single award IDIQ contract. See AR57:5026.

Initially, DHS conditionally approved TSA's plan to make a single award but asked for

additional information in TSA's formal Acquisition Plan. AR28:630. As requested, TSA's

formal Acquisition Plan provided justification for the use of a single award, ten-year contract

vehicle, by analyzing whether the task orders were so integrally related such that only a single

source can reasonably perform the work. *See* FAR 16.504(c)(1)(ii)(D).

For example, TSA thoroughly compared a single award versus a multiple award by

analyzing the risks of both award types, the transition requirements and complexity of the

contract, the contract period of performance, the cost, the schedule, challenges associated with a

multiple vendor award, and risk mitigation factors. AR27:596-600. TSA explained that its

28

historical experience with multi-vendor enrollment services for multiple security programs showed increased complexity to the processes, lack of standardization, and increased costs and confusion to the public. *Id.* The single vendor solution reduced the public confusion, reduced costs, standardized processes, and mitigated IT and cybersecurity risks. In sum, TSA weighed all relevant factors to assess whether a single contract award was in the best interest of the Government. AR27:600. Telos fails to articulate how TSA's analysis was insufficient—in fact, Telos altogether ignores that TSA even conducted an analysis. *See* Pl. Mot. 27-30.

In February 2018, DHS signed and approved the UES formal Acquisition Plan, AR56:5027, thus authorizing (without any conditions) TSA to acquire its UES via a single award IDIQ with a ten-year ordering period, AR28:638. TSA's extensive justification that demonstrates the task orders expected under the contract are so integrally related that only a single source can reasonably perform the work, and DHS's written approval, are precisely what is required under FAR 16.504.

Telos argues that TSA failed to meet the "requirements" of DHS's initial conditional approval for a single-award contract. Pl. Mot. at 29. Telos seems to equate the "requirements" of the conditional approval letter with actual requirements in the FAR. But the agency's internal document providing conditional approval and seeking additional information from TSA is not a FAR requirement, and Telos's argument that these "requirements" were not met is irrelevant. As is Telo's argument that TSA "did not conclude that a single provider was the only way to get the work done." Pl. Mot. at 29-30. That is nothing more than a Telos-created standard that has no bearing on whether TSA properly awarded a single contract here.

Finally, Telos argues that TSA's Request for Proposal contemplates "multiple private sector entities" to meet the "breadth of requirements" under the solicitation. *See* Pl. Mot. at 27.

Telos ignores the actual language of the solicitation, which does not contemplate making awards to multiple private sector entities, but states that "the *Offeror* should detail *its ability* to incorporate multiple private sector capabilities." *See, e.g.*, AR36:918-20.

### C. TSA Complied With The TSA Act In Making A Single Award

Telos next argues that TSA's decision to award only one contract was contrary to the TSA Act, and therefore asks the Court to set aside the award. Telos's argument fails because the TSA Act does not apply to this UES contract. The TSA Act explicitly states that the requirements in the TSA Act, are to be taken "in addition to" the Universal Enrollment Services program. *See* 49 U.S.C. § 44919(k).[5] In other words, the TSA Act does not override, preempt, or change the terms of the solicitation, as Telos suggests. Additionally, even if the express exclusion language of the Act somehow does not apply, Telos fails to identify any language within the TSA Act that requires its retroactive application to solicitations TSA already issued prior to passage of the TSA Act. Indeed, there is a presumption against the retroactive application of a new statute. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 285 (1994).

### V. TSA Rationally Evaluated Telos's Management And Technical Proposals

TSA's evaluation of Telos's management and technical proposals was rational and supported by record evidence. "[T]he determination of relative merits of proposals is the responsibility of the procuring agency since it must bear the burden of any difficulties incurred by reason of a defective evaluation." *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 381 (2003). In protests challenging an agency's evaluations of an offeror's proposals,

---

[5] While the UES contract covers *all* TSA security vetting programs, including its TSA Pre√® program, this legislation only applies to the TSA Pre√® program. Thus, Telos's assumption that the TSA Act applies to this contract is confusing.

review is limited to determining whether the evaluation was reasonable, consistent with the

stated evaluation criteria, and complied with relevant statutory and regulatory requirements." *Id.*

Indeed, the Court is particularly deferential to the agency's technical evaluation. *HomeSource*

*Real Estate Asset Servs., Inc. v. United States*, 94 Fed. Cl. 466, 480 (2010).

### A.     <u>TSA Rationally Evaluated Telos's Management Proposal</u>

Telos argues that the agency irrationally evaluated Telos's management and technical

proposals. Telos first argues that TSA irrationally evaluated its management proposal because it

gave Telos ████████████████████████████████ even though Telos alleges

that it did meet the requirement. The Statement of Work ████████████████



AR40:2582. Citing to ██████ of its proposal, Telos argues that it met this requirement because

it expressly stated that it could ████████████████████████████

██████ Pl. Mot. at 35. But ██████ ██████████████████████

████████████████████████████████████████

██████ As explained in TSA's evaluation of Telos's proposal, ████████████████

████████████████████████████████████████

██████████████

Thus, what Telos really argues here is that TSA did not consider information from one

volume of its proposal when evaluating a different volume of its proposal. But the terms of the

solicitation put the burden on Telos to confine information to the appropriate volume and present

31

all information relevant to one factor within the appropriate section. AR36:916. The solicitation instructs provides that "Information not in its appropriate section or not appropriately referenced will be assumed to have been omitted." *Id.* Further, if more than one section requires the same information as another section, the offeror need not repeat the information, but must reference the other section by identifying "the section and page number where the [responsive] information can be found." *Id.* Therefore, although Telos artfully suggests that it ███████████

████████████████████████████████████████████████████████████████

████████████████████████████ the reality is that Telos did not provide this information as part of its Factor 3 response, and therefore, TSA did not consider this information as part of Telos's Factor 3 response.

Next, Telos argues that the agency assigned ██████████████████████████████

██████████████████████████ Pl. Mot. at 35. First, this is wrong—TSA assigned ████

██████████████████████ *See* AR50:4761-62. Second, Telos argues that it met this requirement, as evidenced by the description ████████████████ Pl. Mot. at 36. Once again, Telos's argument is contrary to the terms of the solicitation, which require Telos to confine responsive information to the appropriate volume and section, or to specifically cite the page number and section of the proposal where the information is written. Telos did neither.

Third, Telos argues that TSA ████████████████████████████

████████ ████████████████████████████████████████████

████████████████ ████████████████████████████████. Pl. Mot. at 36. Telos ignores the facts. TSA did not ████████████████████

████████ it gave Telos ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████



In sum, Telos's complaints about TSA's review of its management and technical proposal are unfounded. Telos must bear the responsibility for its failure to present the information that TSA sought in the proper section of its proposal. And because TSA was not required to look beyond the specific section of the proposal that it was evaluating, it could not have acted irrationally for failing to do so. *See Femme Compe Inc. v. United States*, 83 Fed. Cl. 704, 734 (2008) (finding the agency acted reasonably when it declined to consider information included in a protestor's proposal because the protestor did not confine all information to the appropriate volume to facilitate independent evaluation, as required by the solicitation).

### B. TSA Rationally Evaluated Telos's Technical Proposal

Telos next argues that the agency irrationally evaluated its technical proposal because it (1) assigned ████████████████████████████████████████, and (2)████████████████████████████████████. Pl. Mot. at 37. The administrative record dispels each of these contentions.

First, contrary to Telos's assertions, TSA provided a reasoned explanation supporting its assignment of ███████████████████████████. Telos selectively copied only a

part of TSA's analysis of ████████████████████, to suggest that, although TSA

██████████████████████████████████████████████████

███████████████████████████████████████████. Pl. Mot. at 37.

But TSA's explanation shows that TSA assigned ███████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████

      Second, Telos complains that TSA ███████████████████████

█████████████████████████████████████████ Pl. Mot. at 37.

TSA ████████████████████████████████████████████████

██████████████████████████████████████████████████████

The agency further explained that Telos's ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ Telos has

not demonstrated that determination is irrational.

## VI.    <u>TSA Adequately Stated Its Requirements</u>

      Next, Telos argues that TSA failed to state its requirements, particularly because TSA

██████████████████████████████████████████████████████

████████    In support of this argument, Telos first references exhibits A and B to the First

Amended Complaint. As explained in our motion to strike, ECF No. 36, Telos improperly

attached exhibits A and B, which constitute 55-pages of substantive analyses regarding why

<div align="center">34</div>

██████████████████████████████████████████████████████



Telos believes it should have received a different evaluation.[6]  For the reasons explained in our

motion, the Court should strike these exhibits.

But even if the Court were to consider Telos's extensive recitation as to its disagreements

with the contracting officer's evaluation, the award should not be disrupted.  "The Court will not

second guess an agency's evaluation" unless it is irrational or contrary to law, *Femme*, 83 Fed.

Cl. at 740 (citing *Impresa*, 238 F.3d at 1332), and "[a] protestor's mere disagreement with an

evaluation does not provide an adequate basis to overturn the agency's decision," *Femme*, 83

Fed. Cl. at 740 (citing *Banknote*, 56 Fed. Cl. at 384).

Telos also argues that TSA's decision to 

was (1) unreasonable and (2) inconsistent with the page limitations.  Pl.

Mot. at 38.  Telos's argument is internally inconsistent.  On one hand, Telos argues that it could

.  At the same time,

because of page restrictions.  Pl. Mot. at 39.  Nevertheless,

neither argument should be considered.  First, it is too late for Telos to argue about the page

limitation—Telos was required to raise this complaint in a pre-award protest, which it did not.

*Blue & Gold*, 492 F.3d at 1315 (concluding that protest must challenge terms of solicitation

before "close of the bidding process" otherwise the protestor has waived its right to challenge the

solicitation terms in this Court).

---

[6] If the Court considers Telos's 55-page analysis, we respectfully request the opportunity
to file a response in equal length to explain why Telos's analysis—that amounts to nothing more
than second-guessing the contracting officer—is plainly wrong.  Without an opportunity to file a
response, the Government would be unduly prejudiced because Telos, by attaching these exhibits
to its complaint and essentially trying to incorporate the exhibits into its MJAR, has effectively
expanded its MJAR page limitation requirement by 55 pages.  Thus, if the Court considers these
exhibits, the Government is required to respond to 100 pages of briefing within its 45-page limit.

Second, Telos's argument that TSA ████████████████████████████████
████████████████████████████████████████████████████████, is contradicted by
the record. Pl. Mot. at 39. The solicitation specifically requested information on the ██████
█████████████████████████████████████████████████████████████████
███████████████████████████████ AR36:921. Telos suggests that the requirement in
the solicitation █████████████████████████████████████████████████
█████████████████████████████████████████████████████████ Pl.
Mot. at 39. But if a term of the solicitation was impossible to meet, Telos was required to raise
this argument pre-award and it did not. Thus, it has waived this argument. *Blue & Gold*, 492
F.3d at 1315.

Finally, Telos argues that the solicitation did not "direct offerors to restate RFP
requirements or provide decision trees to demonstrate every potential eventuality." Pl. Mot. at
39. This argument is fruitless because ███████████████████████████████
█████████████████████████████████████████████████████████████
████████████████ The agency assigned █████████████████████████████
██████████████████████████████████████████████████████████.

**VII.   <u>Best Value Determination</u>**

Finally, Telos argues that the Court should overturn TSA's best value determination for
all of the reasons listed in its brief. As explained above, Telos has failed to show its arguments
have merit. Thus, there is no basis to overturn the agency's best value determination.

**VIII.   <u>Telos Is Not Entitled To A Permanent Injunction</u>**

Telos also has not demonstrated that it is entitled to an injunction. The Supreme Court
has held that an "injunction is a drastic and extraordinary remedy, which should not be granted

as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010) (citation omitted). To receive permanent injunctive relief, a protester must demonstrate (1) it has succeeded on the merits, (2) whether it will suffer irreparable harm, (3) whether the balance of hardships favors the grant of injunctive relief, and (4) whether it is in the public interest. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). The plaintiff must establish an entitlement to injunctive relief by clear and convincing evidence. *Baird Corp. v. United States*, 1 Cl. Ct. 662, 664 (1983) ("Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence.").

For the reasons explained above, Telos has failed to demonstrate that it can succeed on the merits. Thus, Telos is not entitled to permanent injunctive relief.

### A.   Telos Has Failed To Establish Irreparable Harm

Telos has not demonstrated irreparable harm. "The irreparable injury requirement erects a very high bar for a movant." *Air Transport Ass'n of Am., Inc. v. Export-Import Bank of the United States*, 840 F. Supp. 2d 327, 334 (D.D.C. 2012) (citation omitted). The "injury must be both certain and great." *Wisconsin Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Telos first alleges irreparable harm in the form of economic harm. *See Air Transport*, 840 F. Supp. 2d at 335 ("The loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms."). It contends the economic harm is loss of the award, which would have been ███ of its total revenue in 2019. Pl. Mot. at 41. Economic harm alone, however, is not typically sufficient to

establish irreparable injury. *See Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379,
381-82 (1997) (*citing Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir.
1983)) ("[E]conomic harm, without more, does not seem to rise to the level of irreparable
injury."); *Sierra Military Health Serv. v. United States*, 58 Fed. Cl. 573, 582 (2003)
("[T]hese potential losses are primarily monetary. While these losses may be substantial,
they are not irreparable.").

Telos next alleges that it established irreparable harm because it lost the fair opportunity
to compete because Idemia won the award based on willful misrepresentation and false
certifications. Pl. Mot. at 41-42. Although a protestor may suffer irreparable harm if it is
deprived of the opportunity to compete fairly for a contract, *Palantir USG, Inc. v. United States*,
129 Fed. Cl. 218, 291 (2016), Telos has failed to demonstrate that it was deprived of a fair
opportunity to compete here. Notably, Telos failed to establish that Idemia made a material
misrepresentation for at least three reasons. Telos had an opportunity equal to all other potential
offerors to tend a proposal in response to the solicitation. That TSA determined Telos's proposal
did not present the best value to the Government does not amount to a loss of fair opportunity to
compete.

**B.     The Balance Of Harms Weighs In TSA's Favor And The Public Interest Is
         Served By Denying An Injunction**

Finally, the balance of harm does not favor Telos, and granting Telos permanent
injunctive relief is not in the public interest. The harm to the United States would be
acute should an injunction prevent the performance of this contract by the expiration of
the bridge contract in September 2019. Indeed, Congress recognized the harm caused by
certain delays in contracting, mandating that, "[i]n exercising jurisdiction under this

subsection, the courts shall give due regard to the interests of national defense and

national security and the need for expeditious resolution of the action." 28 U.S.C.

§ 1491(b)(3). Given the urgent need for proceeding with this awarded contract, based on

TSA's national security mission, and its obligation to conduct security threat

assessments, harm to the "interests of national security" are paramount.

Moreover, as set forth above, the agency evaluated proposals precisely as the

solicitation contemplated and in a fair manner, and Telos is merely a disappointed bidder.

Telos merely argues that the balance of hardships weighs in its favor because it will lose

a significant portion of its revenue. If this harm was sufficient to establish entitlement to

a permanent injunction, this would create a presumption (i.e., a categorical rule) in favor

of a permanent injunction in all challenges, which courts have rejected. Furthermore, this

Court has held that it is in the public interest for "a procuring agency [to] be able to

conduct procurements without excessive judicial infringement upon the agency's

discretion." *Aero Corp., S.A. v. United States*, 38 Fed. Cl. 237, 242 (1997) (citation

omitted). There is a strong public interest in avoiding interference with the procurement

process of Government agencies. *See LABAT-Anderson, Inc. v. United States*, 65 Fed.

Cl. 570, 581 (2005) (public interest is not served by interfering with procurement process

so long as the agency did not violate applicable laws and regulations); *JDL Constr., Inc.*

*v. United States*, 14 Cl. Ct. 825, 829 (judicial intervention in the contract procurement

and administration process is a drastic and extraordinary remedy).

Finally, this case involves national security implications and thus the public

interest is served by declining to grant Telos injunctive relief. TSA is responsible for

securing all modes of public transportation against terrorist threats and sabotage. This

39

contract falls within this national security mission, and Telos has not demonstrated that it is in the public's interest to delay this contract.

For these reasons, the Court should decline to grant Telos injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Telos's motion for judgment on the administrative record, grant the Government's motion, and enter judgment in the Government's favor.

<div style="margin-left:50%">

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

/s/ Ashley Akers
ASHLEY AKERS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 353-0521
Fax: (202) 307-0972
Ashley.Akers@usdoj.gov

</div>

Virginia G. Farrier
Assistant Chief Counsel
(Acquisition, Policy & Transactions)
Chief Counsel's Office

May 21, 2019                          Attorneys for Defendant

Case 1:19-cv-00187-LAS Document 49 Filed 05/10/19 Page 48 of 48

<u>CERTIFICATE OF SERVICE</u>.

I certify under penalty of perjury that on the 21st day of May, 2019, a copy of the

foregoing motion was filed electronically. I understand that the notice of filing will be sent to all

parties by operation of the Court's electronic filing systems. Parties may access this filing

through the Court's system.

<div align="center">

/s/ Ashley Akers
Ashley Akers

</div>